IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPIRIT AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-4651-D |
| VS. | § | |
| | § | |
| ASSOCIATION OF FLIGHT | § | |
| ATTENDANTS-CWA, AFL-CIO, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this suit seeking to vacate an arbitration decision under the Railway Labor Act
("RLA"), 45 U.S.C. § 151 *et seq*., the court must determine whether to transfer the case
under 28 U.S.C. § 1404(a) to the Eastern District of Michigan, which has already ruled on
a motion that is pertinent to the arbitration proceeding and is a district in the state where a
nonparty witness resides. The court concludes that the case should be transferred and
therefore grants defendant's motion to transfer.

I

Plaintiff Spirit Airlines, Inc. ("Spirit"), a Delaware corporation, is an air transportation
carrier that is headquartered in Miramar, Florida. Spirit has flight attendant bases in Fort
Lauderdale, Dallas, Las Vegas, Chicago, Detroit, and Atlantic City. Its second largest flight
attendant base is located in Dallas. The flight attendants who work for Spirit are represented
by defendant Association of Flight Attendants-CWA, AFL-CIO ("AFA").

Spirit and AFA are parties to a collective bargaining agreement ("CBA") that

establishes the rates of pay, rules, benefits, working conditions, and dispute resolution mechanisms for the flight attendants employed by Spirit. Under 45 U.S.C. § 184, Spirit is required to establish a board of adjustment to resolve disputes growing out of grievances and out of the interpretation or application of agreements. To this end, the CBA provides for a "Spirit Airlines Flight Attendant System Board of Adjustment" ("System Board"), which is to be composed of "a Union representative, a Company representative and an arbitrator." Am. Compl. ¶ 8 (emphasis added) (quoting Ex. 1). The CBA further provides "All [System] Board Members, except the arbitrator, shall be full time Company employees." *Id.* (quoting Ex. 1).

In 2011 AFA filed a contractual grievance over whether the CBA requires Spirit to provide domestic partner health benefits under each of its available health plans (the "Grievance"). When the Grievance proceeded to a System Board, AFA designated Carmen Linn ("Linn"), who was then a Spirit flight attendant, as its member on the System Board. Spirit selected Costin Corneau ("Corneau"), a member of Spirit management who remains a full-time Spirit employee. From the then-current list of approved arbitrators, Spirit and AFA selected arbitrator Susan Brown ("Brown") to serve as the neutral on the System Board.

A hearing on the Grievance was held in July 2012 in Miramar, Florida. At the hearing, AFA's counsel announced that Linn would be retiring in September and that Ramona Rios ("Rios") was in attendance and would be replacing Linn on the System Board in future cases. AFA did not at that time designate Rios as its System Board member.

Effective September 1, 2012, Linn voluntarily retired from Spirit and ceased her

tenure as a full-time Spirit employee.  On September 26, 2012 Brown issued an unsigned draft award and requested that Corneau and Linn notify her by October 12 if they wanted to hold an executive session.  When Brown discovered that Linn had retired, she proposed a conference call on the issue of the constitution of the System Board.  Prior to the conference call, AFA responded that it was substituting Rios as AFA's System Board member in place of Linn.  Spirit objected to substituting Rios on the System Board and to Linn's participation in the Grievance after her September 1, 2012 resignation.  When the parties were unable to reach an agreement on the System Board composition issue, AFA filed in December 2012 a lawsuit in the Eastern District of Michigan ("Michigan suit") seeking an order compelling Spirit to recognize Linn as the AFA member of the System Board, an order compelling Spirit to recognize Rios as the AFA member of the System Board, damages relating to denial of domestic partner health benefits, enforcement of Brown's draft award, or an injunction compelling the Grievance to be reheard by a System Board chaired by Brown.

In the Michigan suit, Spirit filed a motion to dismiss AFA's action as a "minor dispute" under the RLA.  The Eastern District of Michigan granted Spirit's motion and dismissed the case, concluding that "Linn became ineligible to serve as a System Board member once she ceased being a full-time Spirit employee," and concluding that Brown's decision "is not now final and binding."  *Ass'n of Flight Attendants-CWA, AFL-CIO v. Spirit Airlines, Inc.*, 2013 WL 1858754, at *5-6 (E.D. Mich. May 2, 2013).  The court held that the dispute between the parties on how to proceed arose from their distinct interpretations of the CBA, and "[w]hether the CBA contains terms applicable to the situation or omits a relevant

- 3 -

provision, the dispute constitutes a 'minor' one" that must first be resolved through the mandatory procedures set forth in the RLA.  *Id.* at *6.  AFA did not appeal the court's ruling or request that it be altered or amended.

In August 2013 AFA submitted correspondence framed as a "motion" requesting that Brown find that Linn was eligible to serve on the System Board or order that Rios be substituted as AFA's System Board member for the Grievance.  Brown then sent a November 18, 2013 letter ("November 18 Order") stating that she had "the authority to rule on the procedural question of the proper composition of the Board," and concluding "that despite [their] change in status, both [Linn] and [Brown] are still members of the Board until a final award has been issued and we become *functus officio*."  Am. Compl. Ex. 11.  In January 2014 Brown and Linn issued what purports to be a final award ("Award") in the Grievance.

Spirit filed the instant lawsuit in this court on November 22, 2013 challenging Brown's November 18 Order.  It amended its complaint on January 17, 2014 and seeks a judgment vacating or declaring null and void the November 18 Order and Award on the grounds, *inter alia*, that they violate the CBA and the RLA and were not agreed to by a majority of the eligible System Board members.  AFA moves to transfer the case to the Eastern District of Michigan under § 1404(a) for the convenience of parties and witnesses and in the interest of justice.  Spirit opposes the motion.

II

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

- 4 -

where it might have been brought." "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983)). "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)). Moreover,

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*"); *see also Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Once the court resolves this issue, the court must in deciding whether to transfer the case evaluate "a number of

private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of foreign law.

*Id.* (citations omitted). "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315. AFA must establish "good cause" for transferring the case, meaning that, "in order to support its claim for a transfer, [it] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (final brackets in original) (quoting § 1404(a)).

### III

The court addresses first whether the judicial district to which transfer is sought—here, the Eastern District of Michigan—is a district in which this suit could have been filed. The court holds, and the parties do not dispute, that Spirit could have brought this action in the Eastern District of Michigan. Venue in this case is governed by 28 U.S.C. § 1391, which provides, in relevant part, that venue is proper in "a judicial district in which

any defendant resides." *Id.* § 1391(b). Because AFA is treated like a corporate defendant for purposes of venue, *see Denver & Rio Grande Western Railroad Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 559-60 (1967), and Michigan is a state with multiple federal districts, AFA "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C.§ 1391(d). It is undisputed that Spirit operates a flight attendant base in Detroit and AFA represents its Detroit-based members. This is sufficient to establish personal jurisdiction in the Eastern District of Michigan, and that AFA "resides" in that district. Accordingly, the court holds that the case could have been filed there.

IV

Before addressing the public and private interest factors, the court determines the weight to be accorded Spirit's choice of forum. "A plaintiff's choice is normally entitled to deference, but when [it] files suit outside [its] home forum, the weight accorded to the choice is diminished." *Sivertson*, 2011 WL 4100958, at *4 (citations omitted). Spirit's choice of the Northern District of Texas is not entitled to significant weight. Although Spirit's second largest flight attendant base is located in Dallas, Spirit is a Delaware corporation with its headquarters in Florida, and none of the operative facts occurred within the state of Texas. *See, e.g., Rimkus Consulting Grp., Inc. v. Balentine*, 693 F.Supp.2d 681, 690-91 (S.D. Tex. 2010) ("Although a plaintiff's initial choice of forum is entitled to deference, the degree of deference is higher when he has chosen his home forum. Conversely, when a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur

- 7 -

in the chosen forum, a court gives less deference to a plaintiff's choice." (citation omitted)).

V

The court next considers the private interest factors.

A

The first private interest factor examines the relative ease of access to sources of proof. Because there is no suggestion that any of the evidence in this case is located in either the Northern District of Texas or the Eastern District of Michigan, this factor is neutral.

B

The second private interest factor examines the availability of compulsory process over witnesses. The court finds this factor to be neutral. AFA does not identify any specific witnesses for whom compulsory process is necessary but unavailable. AFA argues that it will need testimony from Linn, who resides in Michigan. From the present motion record, however, "there is currently nothing to suggest that [the identified] witness[] would be unwilling to testify." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, 2009 WL 2634860, at *5 (N.D. Tex. Aug. 26, 2009) (Fitzwater, C.J.). Because there is no evidence that either side requires compulsory process to obtain testimony in either venue, this factor is neutral.

C

The third factor is the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc*., 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011)

- 8 -

(Fitzwater, C.J.) (declining to consider parties' employees under third factor). A party seeking a transfer must "identify the 'key witnesses and the general content of their testimony.'" *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812). "'The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover.'" *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.) (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007)); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Global Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

AFA argues that this factor weighs in favor of transfer because Linn, a nonparty witness, resides in Michigan. AFA faults Spirit for not raising Linn's retirement before Brown issued her draft award. It posits that, if the case is not dismissed on a Fed. R. Civ. P. 12(b)(6) motion, it anticipates pursuing a waiver and estoppel argument, resulting in Linn's being called to testify regarding practices and past cases before the System Board, the notice she provided regarding her retirement, and other facts that show that Spirit had notice that

Linn might retire before Brown issued a draft decision.  AFA maintains that, because Spirit will likely dispute these facts and they may not be conclusively established during discovery, there may be questions of material fact at issue in this case, which would require Linn to testify at trial.  It also maintains that, although Spirit has a flight attendant base in Dallas, Spirit is headquartered in Florida, and none of the potential witnesses lives in Texas. Accordingly, it posits that the cost and inconvenience would be significant to require all of the potential witnesses to travel to Texas to testify.

Spirit counters that cases such as this one, which seek vacatur of a System Board order, are  typically decided on motions or cross-motions for summary judgment.  It argues that AFA has failed to specify the nature of the testimony that Linn would offer or discuss its importance, and has not represented that it would be unable to secure Linn's attendance in the highly improbable event that this matter proceeds to trial in Dallas.

The court concludes that this factor weighs slightly in favor of transfer.  It is at least feasible that, if genuine issues of material fact prevent this case from being resolved on motions for summary judgment, Linn could be called to testify as a witness at trial.  And it would clearly be more convenient for her to do so in Michigan, the state in which she resides.  By contrast, neither side suggests that there are any potential witnesses residing in the Northern District of Texas.

D

The fourth private interest factor considers the practical problems that make trial easy, expeditious, and inexpensive.  AFA argues that this factor favors transfer because Spirit has

- 10 -

a base in Michigan and the Eastern District of Michigan was the forum for previous litigation surrounding the same actors and facts as in this case.  Spirit does not contest these facts, arguing only that its second-largest flight attendant base is located in Dallas (where 292 Spirit flight attendants are currently based compared to 114 based in Detroit).

The court concludes this factor is neutral. The number of Spirit flight attendants in Dallas or Detroit is simply irrelevant to the facts and issues in this case.  And although the Eastern District of Michigan is already familiar with the facts and background of this case and has already issued an order in this case, there is no reason to conclude that, as a result, a trial of the case in the Eastern District of Michigan would be easier, more expeditious, or less expensive.

## VI

The court next considers the public interest factors.

## A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues.  AFA fails to address this factor, and Spirit argues this factor is neutral, citing evidence that the Northern District of Texas shows a higher level of civil filings per judgeship than the Eastern District of Michigan (639 vs. 402), but that the Northern District of Texas' median time for disposition of civil matters from the date of filing is faster (6.7 months vs. 7.7 months).  As this court noted in *Southwest Airlines Co.*, 2007 WL 268808, at *4, "one court's slightly faster median disposition time and the other's slightly less congested docket render this factor neutral."

- 11 -

B

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D. Tex. 2005)).

AFA argues that, aside from the fact that Spirit (a Florida-based company) has a base in the state of Texas, this case has no ties to Texas and there is no local interest in Texas in resolving this matter or familiarity with the case. By contrast, the Eastern District of Michigan has already issued a decision on the central dispute of this controversy—the composition of the System Board—so it is not only more familiar with the case, it also has an interest in interpreting its own decision. AFA maintains that Spirit's claim that Brown did not have jurisdiction to issue a ruling on the System Board composition is based, at least in part, on arguing that it conflicts with the decision in the Michigan suit and is barred by the doctrines of res judicata and judicial estoppel on the theory that the issue has already been decided by the Eastern District of Michigan. AFA posits that the Eastern District of Michigan "clearly has an interest in this dispute and the interpretation of its decision." D. Reply 5.

Spirit contends that the Michigan suit does not create a local interest in the dispute. It cites to the decision in the Michigan suit, arguing that the court dismissed AFA's action with no complicated factual record and without considering extrinsic evidence. AFA neither

- 12 -

appealed the decision nor sought clarification or modification.  Spirit maintains that the Eastern District of Michigan's final decision speaks for itself and that this court is capable of reading it.

Although these facts impact the third public interest factor (to which the court turns next), the court concludes that the second factor is neutral.  The fact that the Eastern District of Michigan has already issued an order in this case is not the type of local interest in having "localized interests decided at home" that courts consider in weighing this factor. *Volkswagen I*, 371 F.3d at 203; *see LeBlanc v. C.R. England, Inc.*, ___ F.Supp.2d ___, 2013 WL 4463366, at *10 (N.D. Tex. Aug. 13, 2013) (Boyle, J.) ("'A local interest is demonstrated by a relevant factual connection between the events and the venue.'" (quoting *Vasquez v. El Paso II Enters., LLC*, 912 F.Supp.2d 445, 451 (W.D. Tex. 2012))).  The dispute itself has no relation to either Michigan or Texas.  Spirit has flight attendant bases in Michigan and Texas, the majority of facts giving rise to this case occurred in Florida, and the resolution of this controversy is not governed by Michigan or Texas law.  Accordingly, this factor is neutral.

## C

The third factor addresses the familiarity of the forum with the law that will govern the case.  Federal law will govern Spirit's claims brought under the RLA.  The Eastern District of Michigan and the Northern District of Texas are equally capable of interpreting and applying federal law.  The issues, however, that will arise in this case, namely, whether the composition of the System Board complies with the requirements of the CBA and the

- 13 -

RLA, are questions that the Eastern District of Michigan has already considered and decided. Although the court ultimately concluded that the dispute in the Michigan suit was "minor" and had to be resolved through the mandatory procedures set forth in the RLA, it nonetheless considered the procedural background and controlling law and reached a conclusion on when Linn became ineligible to serve as a System Board member.  Because the Eastern District of Michigan is already familiar with the facts and law that will govern this case, this factor weighs in favor of transferring the case.

D

The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law.  Neither side argues that there is a problem of conflict of laws or applying foreign laws.  This factor is neutral.

E

Considering all the relevant factors holistically, the court holds that the Eastern District of Michigan is clearly more convenient when compared to the Northern District of Texas.  Apart from the factors that are neutral, the location of Linn supports transferring this case because neither side has identified any witness located in the state of Texas or elsewhere.  In addition, the familiarity of the Eastern District of Michigan with the facts of this case and the fact that the Eastern District of Michigan has already decided issues presented in this case makes it more convenient for that court to decide this case.

By contrast, other than the irrelevant fact that Spirit's second-largest flight attendant base is located in Dallas, there is no reason for the Northern District of Texas to decide this

- 14 -

case.  This court has not previously dealt with any aspect of the matter, none of the witnesses or evidence is located here, neither party is headquartered here, none of the facts giving rise to the dispute occurred here, and Texas law does not govern any of the claims in this dispute.  In addition, because Texas is not Spirit's home forum, Spirit's choice of the Northern District of Texas is not entitled to the weight otherwise given to the plaintiff's choice of forum.  This constellation of factors warrants transferring a case under § 1404(a).  *See Carolei v. Tex. Mesquite Connection*, 2012 WL 3599460, at *2-3 (N.D. Tex. Aug. 6, 2012) (Ramirez, J.) (transferring case where all proof was located in transferee district and transferor district had no local interest, where all other factors were neutral), *rec. adopted*, 2012 WL 3613971 (N.D. Tex. Aug. 22, 2012) (Lindsay, J.); *see also Kimberly-Clark*, 2009 WL 2634860, *4-10 (same, except discussing potential witness and party convenience in conclusion after explicitly stating factor was neutral).

The court therefore concludes that, although only two factors favor transfer, these factors considered as a whole demonstrate that the Eastern District of Michigan is clearly more convenient when compared to the Northern District of Texas.[1]

\* \* \*

AFA's December 16, 2013 motion to transfer is granted, and this case is transferred to the Eastern District of Michigan, Southern Division.  The clerk of court shall effect the

---

[1]To the extent it can be argued that this conclusion relies on, or emphasizes, fewer than all of the private and public interest factors, the court notes that "[a]lthough [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315.

transfer according to the usual procedure.[2]

      **SO ORDERED**.

February 14, 2014.

                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE

---

[2]On January 31, 2014 AFA filed a motion to dismiss Spirit's first amended complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted. This motion, which relates to the merits of Spirit's action, should be decided by the transferee court. Accordingly, the court has not addressed the motion.