UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SPIRIT AIRLINES, INC.,

               Plaintiff,                        Case No. 14-CV-10715

v.                                         Honorable Patrick J. Duggan

ASSOCIATION OF FLIGHT
ATTENDANTS – CWA, AFL-CIO,

               Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

## I.  INTRODUCTION

This case is brought under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*.  Plaintiff Spirit Airlines, Inc. ("Spirit") asks the Court to vacate an arbitration award issued pursuant to the mandatory arbitration provisions of the RLA and the collective bargaining agreement ("CBA") between Spirit and Defendant Association of Flight Attendants – CWA, AFL-CIO ("AFA").  AFA filed a counterclaim, urging the Court to confirm the award.

Now before the Court is AFA's motion for judgment on the pleadings.  The matter is fully briefed and the Court heard oral argument on September 4, 2014.  In

addition, AFA filed a supplemental brief following oral argument.  For the reasons that follow, the Court will deny AFA's motion for judgment on the pleadings.

## II.  BACKGROUND[1]

Spirit is an airline providing passenger air transportation and a "carrier" within the meaning of the RLA.  Am. Compl. ¶ 1 (Page ID 402).  AFA is a labor organization representing the flight attendants employed by Spirit.  *Id.* ¶ 2 (Page ID 402-403).  Spirit and AFA are parties to a CBA that establishes rates of pay, rules, benefits, working conditions, and dispute resolution mechanisms.  *Id.* ¶ 5 (Page ID 403).

Section 22 of the CBA establishes procedures for processing and resolving labor grievances between Spirit and AFA.  Under § 22.F, the process culminates in a final and binding arbitration of unresolved grievances before the Spirit Airlines Flight Attendant System Board of Adjustment ("Board" or "System Board").  The System Board has authority to "adjust[] and decid[e] disputes which may arise out of the interpretation and/or application of the [CBA]."  Am. Compl. Ex. 1 (Page ID 420).  The Board is comprised of three members: a representative of AFA, a representative of Spirit, and a neutral arbitrator; the two partisan members "shall be full time Company employees" and the arbitrator is selected from a pre-approved

---

[1]  The background is gleaned from the amended complaint and the materials attached to it.  *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).  All well-pleaded allegations in the amended complaint are deemed true.  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

list of five mutually-agreed-upon individuals.  *Id.* (Page ID 421).  Importantly for the present purposes, the CBA provides that "[d]ecisions of the Board . . . shall be by a majority vote and shall be final and binding on all parties."  *Id.* (Page ID 422).

On January 28, 2011, AFA filed a grievance regarding domestic partner health care benefits.  Am. Compl. ¶ 12 (Page ID 404).  The matter proceeded to the System Board.  *Id.* ¶ 14 (Page ID 404).  AFA designated Carmen Linn, a Spirit flight attendant at the time, to serve as AFA's partisan representative on the System Board, and Spirit selected Costin Corneanu, a member of Spirit's management team, to serve as its partisan representative.  *Id.*  From the then-current list of five neutral arbitrators, the parties selected Susan Brown.  *Id.* ¶ 15 (Page ID 404).

A hearing on the grievance was held on July 26, 2012, during which AFA's attorney announced that Linn would soon be retiring and that Ramona Rios would take her place as AFA's System Board representative.  Am. Compl. Ex. 2 (Page ID 426).  However, at the time of the hearing, Linn remained AFA's designated representative for the grievance at issue in this case.

Linn retired from Spirit effective September 1, 2012.  Am. Compl. ¶ 21 (Page ID 405).  At this time, the System Board had not issued a decision in connection with the present grievance.  On September 26, 2012, Brown circulated a draft decision on the grievance, which was favorable to AFA, along with an

3

email message to Linn and Corneanu inquiring about the possibility of holding an executive session to discuss the draft opinion. *Id.* ¶ 23 (Page ID 406).[2]  Apparently unaware of Linn's retirement, Corneanu and Brown continued to exchange emails, copying Linn, regarding dates for an executive session. *Id.* at Ex. 4 (Page ID 446-453).  Eventually, on October 12, 2012, Corneanu emailed Brown advising that Linn had retired on September 1 and was thus, in Corneanu's view, ineligible to continue service on the System Board. *Id.*  Brown responded suggesting a conference call on the issue of the composition of the System Board. *Id.* Prior to the conference call, AFA's attorney notified Brown and Corneanu that AFA was substituting Rios as AFA's designated representative on the System Board in place of Linn. *Id.*

On October 19, 2012, a conference call with Brown and the attorneys for Spirit and AFA took place on the record.  The participants discussed the composition of the System Board in light of Linn's retirement.  On the one hand, Spirit's attorney expressed the view that Linn was no longer a current Spirit employee and thus could no longer serve on the System Board pursuant to the CBA's requirement that the two partisan System Board members "be full time Company employees."  At the same time, Spirit asserted that AFA cannot

---

[2] An executive session is "a meeting of the Board to discuss a proposed award." Chris A. Hollinger, *The Railway Labor Act*, ABA Section of Labor and Employment 506 (3d ed. 2012).

4

substitute Rios for Linn given that the arbitration proceedings had already commenced, as there is no provision of the CBA allowing mid-arbitration substitutions and the case law interpreting the RLA prohibits it.  In light of Spirit's position that Linn cannot continue her service on the System Board and Rios cannot be substituted for Linn, Spirit's attorney presented three possible solutions: (1) allow the matter to be decided by the remaining two System Board members – Corneanu and Brown – and "hope to reach a majority decision, or a deadlock, resulting in the effective denial of the grievance"; (2) start anew with new System Board members, including a new arbitrator; or (3) withdraw the grievance.  Am. Compl. Ex. 5 (Page ID 456-461).

On the other hand, AFA's attorney argued during the telephone conference that the CBA does not preclude Linn's continued service on the System Board. AFA's attorney pointed out that, although the CBA provides that the two partisan System Board members must be "be full time Company employees," the CBA does not specify at what point in time the member must be a full time employee. In other words, the CBA does not provide that the System Board member must continue to be a full time employee throughout the entire duration of the grievance proceedings; thus, AFA's position was that the CBA language could reasonably be interpreted to require that the Board member be a full time employee only when appointed to the Board or at the time of the hearing on the grievance, in which case

5

Linn's continued participation on the Board would not violate the CBA. AFA's attorney also disagreed with Spirit that Rios could not be substituted for Linn. AFA's attorney agreed with Spirit that the CBA is silent on the issue of substitution, but AFA's attorney maintained, contrary to Spirit's position, that the silence cuts in favor of allowing substitution, and that case law does not foreclose substitution in the present circumstances, because Rios was present during the July 26 hearing on the grievance. *Id.*

After listening to these arguments, Brown informed the parties of her belief that she lacks jurisdiction to decide matters concerning the composition of the Board (i.e., whether Linn's continued service, or her replacement by Rios, is proper) and that she cannot proceed with the proceedings until the parties resolve the Board composition issue. *Id.* (Page ID 459).

On December 26, 2012, AFA filed a lawsuit over which this Court presided, seeking an order recognizing either Linn or Rios as the AFA System Board representative for the purposes of completing the arbitration of the grievance or, alternatively, compelling Spirit to resubmit the grievance for a new hearing before a System Board chaired by Brown. On May 2, 2013, the Court granted Spirit's motion to dismiss the 2012 lawsuit, holding that only final arbitral awards are subject to judicial review and that Brown's decision was not yet final because "a majority vote is required to render a final decision" and, "[a]ccording to the CBA,

6

Linn became ineligible to serve as a System Board member once she ceased being a full-time Spirit employee." *Ass'n of Flight Attendants – CWA, AFL-CIO v. Spirit Airlines, Inc.*, No. 12-CV-15641, 2013 WL 1858754, at *5 (E.D. Mich. May 2, 2013) (the "2012 lawsuit"). AFA did not appeal the Court's ruling.

On August 14, 2013, more than three months after the Court dismissed the 2012 lawsuit, AFA filed a "motion" directed at Brown asking her to either find Linn eligible to serve on the System Board or allow Rios to serve in place of Linn for the purposes of completing the arbitration process. Am. Compl. Ex. 7 (Page ID 485-499). Spirit responded the next day, arguing that Brown does not have jurisdiction to decide the Board composition issue – a conclusion that Brown had already reached during the October 19, 2012 conference call. *Id.* at Ex. 8 (Page ID 501-506).

On September 24, 2012, Brown changed course, informing counsel for AFA and Spirit that she will issue a ruling on the Board composition issue. Brown backtracked from her prior position that she does not have jurisdiction to resolve the issue in light of this Court's May 12 ruling on Spirit's motion to dismiss in the 2012 lawsuit. In her letter to counsel, Brown wrote, in pertinent part:

> When this issue of procedure arose during the course of the Board's deliberations, I indicated I thought that the composition of the Board was not properly before me and suggested that the parties address the matter in another forum, preferably by mutual agreement. The Company apparently inferred, incorrectly, that I meant by this suggestion that they should put the matter before another arbitrator.

7

In fact, I never considered that an option; the only alternatives I mentioned during our conference call were the preferred mutual agreement and court. The federal District Court has now opined that the matter indeed belongs to an arbitrator and noted that the Court cannot make any rulings on these proceedings, substantive or procedural, until a final and binding award has been issued.

The Company maintains that the Court held that the Board composition issue belongs before *an* arbitrator, a ruling that excludes me because I am no longer on the agreed-upon panel of arbitrators for Spirit/AFA cases. I disagree that the Court's ruling requires my exclusion for the following reasons.

Nowhere did the Court suggest that the matter of panel composition must be sent to a separate arbitrator. This issue arose during the course of the domestic partner insurance grievance arbitration, which is still pending and over which I still have jurisdiction despite my elimination from the current contractual list of agreed-on arbitrators. My first take on how the question of Board composition should be resolved was rejected by the Court; my current position is therefore in accordance with its wisdom and I shall answer the question raised. Although these proceedings no longer display the ideal characteristic of arbitrations as the speedy resolution of labor-management disputes, sending the matter to another arbitrator would surely add at least a year to the proceedings, a result to be avoided.

Am. Compl. Ex. 9 (Page ID 509-510) (emphasis in original). Brown concluded the letter by soliciting briefing from the parties on the Board composition issue. Spirit declined to submit a brief, instead writing a letter to Brown stating that it "declines to participate any further [in proceedings] before you [Brown]." Am. Compl. Ex. 10 (Page ID 512-514).

Brown proceeded to rule on the Board composition issue on November 18, 2013, concluding that Linn could continue to serve on the Board despite her retirement.  Brown reasoned as follows:

> The Company's view on this issue notwithstanding, I conclude that the last court of competent jurisdiction has returned this matter to an arbitrator and because there is, as yet, no final and binding award, my jurisdiction over all issues in the case continues.  Irrespective of my former views, based on the court's opinion, I have the authority to rule on the procedural question of the proper composition of the Board.
>
> It is undisputed that the composition of the Board was proper when initially constituted.  A Board member's status does not change during the life of a case even though that member may become ineligible to serve on *future* Boards.  It is not unusual for a neutral arbitrator, while a case is pending, to decline to serve for a subsequent contract term or to be non-reappointed for future cases; that arbitrator does not lose jurisdiction over an active case because of his or her change in status.  The same can be said for a party arbitrator.  The only reported exceptions, when a party arbitrator dies or changes sides during the course of a hearing, are not relevant here.  Thus, I conclude that despite our change in status, both Carmen Linn and I are still members of the Board until a final award has been issued and we become *functus officio*.  (For a discussion of some of these issues, see Marx, Herbert L. Jr., "Tripartite Arbitration", Labor and Employment Arbitration, Second Edition, Bornstein, Gosline, and Greenbaum, Eds., 2011).

Am. Compl. Ex. 11 (Page ID 517-518) (emphasis in original).

On November 22, 2013, four days after Brown concluded that Linn could continue her service on the System Board, Spirit filed the present lawsuit in the United States District Court for the Northern District of Texas.  The case was subsequently transferred to the Eastern District of Michigan pursuant to 28 U.S.C.

9

§ 1404(a) and then reassigned from U.S. District Judge Paul D. Borman to this Court as a companion case to the 2012 lawsuit.

Meanwhile, on November 24, 2013, Brown contacted Linn and Corneanu to schedule an executive session on the grievance. In the email, Brown wrote that she is "aware of the controversy surrounding [her] ruling" and "know[s] that the Company has filed a complaint to vacate that ruling," but nevertheless urged Linn and Corneanu to attend an executive session and proceed forward with reaching a finding and binding decision on the grievance. Am. Compl. ¶ 59 (Page ID 411). Corneanu responded to Brown's email reiterating Spirit's position that Linn is not eligible to serve on the Board but stating that she is "ready and willing to participate in an executive session with you [Brown] as the only other eligible board member." *Id.* ¶ 60 (Page ID 411). Brown responded to Corneanu's email, stating: "I understand that the Company disagrees with my ruling on the Board composition; it stands until vacated." *Id.* ¶ 62 (Page ID 411).

On December 17, 2013, Brown held an executive session on the grievance and allowed Linn to participate and vote on the outcome. On January 10, 2014, a final decision was issued on the grievance in favor of AFA, with Brown and Linn in the majority and Corneanu dissenting. Am. Compl. Ex. 12 (Page ID 520-542).

In this lawsuit, Spirit seeks an order from the Court vacating, or declaring null and void, both Brown's unilateral November 18, 2013 ruling on the Board

composition issue and the Board's January 10, 2014 final decision in favor of AFA on the grievance. AFA has filed a counterclaim seeking an order confirming and enforcing the Board's award in its favor. On June 10, 2014, AFA filed the present motion for judgment on the pleadings seeking confirmation of the Board's award.

### III. LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standards of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the

11

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id*. This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although a court ruling on a Rule 12(b)(6) motion "primarily considers the allegations in the complaint," matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be considered. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted).

## IV.  ANALYSIS

### A.  The Parties' Arguments

In their briefing, the parties focus on the propriety of Brown's unilateral ruling that Linn could continue her service on the System Board after her retirement from Spirit. Spirit argues that the RLA and the parties' CBA require a

majority ruling on matters before the System Board and that Brown's unilateral ruling on the Board composition issue is thus an unenforceable "minority ruling by but one eligible System Board member," rendering Linn's tiebreaking vote in favor of AFA on the underlying grievance invalid. In support of its position, Spirit relies mainly on two cases – *Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257 (6th Cir. 1984) and *Association of Flight Attendants, AFL-CIO v. Aloha Airlines, Inc.*, 158 F. Supp. 2d 1200 (D. Haw. 2001), both discussed below.[3]

AFA admits that Brown issued a unilateral ruling on the Board composition issue, but argues that unilateral rulings resolving so-called "procedural issues" – that is, issues growing out of the ongoing arbitration – are allowable. AFA contends that the Board composition issue is a procedural one and thus a unilateral ruling on the matter by the neutral arbitrator is not improper. In support of its position, AFA relies mainly on *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S. Ct. 909 (1964) and *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344 (6th Cir. 1989), both discussed below.

---

[3] Alternatively, Spirit argues that Brown's decision allowing Linn to continue her service on the Board is inconsistent with this Court's holding in the 2012 lawsuit that "Linn became ineligible to serve as a System Board member once she ceased being a full-time Spirit employee." 2013 WL 1858754, at *5. Invoking preclusion principles, Spirit argues that Brown had no authority to effectively overturn this Court's ruling on the issue. However, because the Court accepts Spirit's primary argument that Brown's unilateral ruling violated the RLA and the CBA, the Court does not address Spirit's alternative contention that preclusion principles bar Brown's ruling allowing Linn to continue her service on the Board.

## B.  General Framework of the RLA

"One of the purposes of the RLA is '[t]o avoid any interruption to commerce or to the operation of any [air or rail] carrier engaged therein.'  45 U.S.C. § 151a(1).  To that end, the RLA provides mandatory procedures for resolving disputes between carriers and unions."  *Airline Prof'ls Ass'n, Teamster Local Union 1224 v. ABX Air, Inc.*, 400 F.3d 411, 413 (6th Cir. 2005).  Under the RLA, disputes are separated into two distinct categories: minor disputes and major disputes.  *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S. Ct. 1282, 1290 (1945).  Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation."  *Trainmen v. Chicago R. & Ind. R.R. Co.*, 353 U.S. 30, 33, 77 S. Ct. 635, 637 (1957).  By contrast, "major disputes" are controversies "over the formation of collective agreements or efforts to secure them."  *Elgin*, 325 U.S. at 723, 65 S. Ct. at 1290.

Minor disputes "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions."  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253, 114 S. Ct. 2239, 2244 (1994).  This means that federal courts generally lack jurisdiction over adjustment board decisions.  *See Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co.*, 373 U.S. 33, 38, 83 S. Ct. 1059, 1062 (1963) (the RLA provides a "mandatory, exclusive, and comprehensive

14

system" for resolving minor disputes, which cannot be defeated by resorting to another forum); *Stephens v. Ret. Income Plan for Pilots of U.S. Air, Inc.*, 464 F.3d 606, 610 (6th Cir. 2006) (adjustment boards have exclusive jurisdiction over minor disputes).   However, judicial review over decisions of RLA-created adjustment boards is not entirely foreclosed; federal courts have jurisdiction to overturn such decisions in three – and only three – circumstances: (1) failure of the board to comply with the requirements of the RLA; (2) failure of the board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption.   45 U.S.C. § 153 First (q).   *See also Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S. Ct. 399, 402 (1978) ("Section 153 First (q) unequivocally states that the 'findings and order of the [Adjustment Board] shall be conclusive on the parties' and may be set aside only for the three reasons specified therein.   We have time and again emphasized that this statutory language means just what it says.").   The RLA mandates that adjustment board decisions be made by a majority of members eligible to vote.   *See* 45 U.S.C. § 153 First (n) ("A majority vote of all members of . . . the Adjustment Board eligible to vote shall be competent to make an award with respect to any dispute submitted to it.").   Moreover, an adjustment board does not conform, or confine, itself to matters within the scope of its jurisdiction where its decision violates the pertinent CBA.   *See Jones*, 728 F.2d at

15

265 ("[T]he jurisdiction of the arbitration boards is limited to that which is conferred upon them by the arbitration agreement.").

In addition, the exclusive jurisdiction of RLA-created adjustment boards includes issues of "procedural arbitrability," but not issues of "substantive arbitrability." *Airline Pilots Ass'n, Int'l v. Pan Am. Airways Corp.*, 405 F.3d 25, 34 (1st Cir. 2005). Questions of substantive arbitrability relate to whether there is an agreement to arbitrate the type of dispute in question or, phrased differently, whether the parties have agreed to submit a particular grievance to arbitration. *Smith v. Am. Airlines, Inc.*, 414 F.3d 949, 953 (8th Cir. 2005). Such questions are for the court to decide, although, in doing so, "a court is not to rule on the potential merits of the underlying claims." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1419 (1986). Conversely, procedural questions are ones that "grow out of the dispute and bear on its final disposition," and such issues are "left to the arbitrator," not the courts. *John Wiley*, 376 U.S. at 557, 84 S. Ct. at 918.[4]

## C.  Discussion

---

[4] Procedural issues include, for example, whether the time limit set forth in a CBA for filing a grievance has been tolled, *Sheehan*, 439 U.S. at 93, 99 S. Ct. at 402, whether prerequisites to arbitration, as set forth in a CBA, have been satisfied, *John Wiley*, 376 U.S. at 555-556, 84 S. Ct. at 917-918, and whether an arbitration panel member who recused himself may name his replacement, *Apperson*, 879 F.2d at 1355.

Spirit argues that AFA's motion for judgment on the pleadings should be denied because the Court has jurisdiction, notwithstanding AFA's contrary position, to vacate Brown's unilateral ruling that Linn may continue serving on the System Board after her retirement.  Spirit attacks the unilateral nature of the ruling, arguing that it violates the majority-vote requirement of the RLA, 45 U.S.C. § 153 First (n) ("A majority vote of all members of . . . the Adjustment Board eligible to vote shall be competent to make an award with respect to any dispute submitted to it."), along with the similar majority-vote provision contained in the CBA.  Am. Compl. Ex. 1 (Page ID 422) ("Decisions of the Board . . . shall be by a majority vote.").

In support of its argument, Spirit relies on *Jones* and *Aloha*, two cases in which courts have held that the failure of the adjustment board to comply with the RLA and the pertinent CBAs requires vacation of the board's decision under 45 U.S.C. § 153 First (q).  In *Jones*, the Sixth Circuit vacated an arbitration award issued by a three-member board consisting of an airline representative, a union representative, and a neutral arbitrator for failure to comply with the requirements of the RLA.  The court determined that 45 U.S.C. § 153 First (j) and (n), read together, "entitle the parties who appear before the Board the right to be heard by a three member Board, a majority of whom must then agree in order to resolve the dispute at hand," and that the board's award ran afoul of this statutory requirement

17

because the two partisan members were replaced (one was promoted and the other retired) after the hearing on the grievance but before a decision was reached. *Id.* at 262, 264. Because the replacement members, one of whom supplied the tiebreaking vote, were not present for the hearing and did not discuss the award with each other or with the neutral arbitrator before casting their votes, the court reversed the judgment of the district court approving the award and remanded for re-arbitration proceedings. In doing so, the court noted that "it is improper for the chairman to render a decision against either party without first consulting with the other designated arbitrators." *Id.* at 263.

Spirit also relies on *Aloha*. The system board of adjustment there, like the board in *Jones*, consisted of an airline representative, a union representative, and a neutral arbitrator. After the hearing but a before a decision was reached on the grievance, the airline's representative left Aloha's employment. *Id.* at 1202-1203. Thereafter, the neutral arbitrator unilaterally issued a decision in favor of the company on the grievance without consulting the other system board members. *Id.* at 1203. In response to the union's concerns about the validity of the arbitrator's unilateral decision, the airline appointed a replacement board member, who reviewed the hearing transcript and evidence and concurred with the arbitrator's decision, thus forming a purported majority.

18

Citing 45 U.S.C. § 153 First (n) (the majority-vote requirement), a provision of the parties' CBA requiring that system board decisions be decided by majority vote, and *Jones*, the court held that the arbitrator's unilateral decision was invalid pursuant to the general rule that, "where there are multiple arbitrators, a majority are required to render a valid decision." *Id.* at 1205. The court wrote: "Allowing the neutral arbitrator on a three-member panel to make a unilateral decision is no small matter, it goes against the entire construct of the CBA and RLA arbitration system." *Id.* at 1206. The court further held, relying on *Jones*, that the post-hearing substitution of the departed airline representative did not cure the deficiency: "The Sixth Circuit held that the substitute appointments who had not heard the evidence were not capable of participating in the decision" because "[e]mployees are entitled to have their grievances resolved by arbitrators who participated in the hearing, not those merely appointed after the fact." *Id.* at 1207. Having determined that "[t]he integrity of the entire arbitration process here has been fundamentally called into question and is fatally defective," the court ordered that the matter be re-arbitrated. *Id.* at 1208. *See also Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 755 F. Supp. 2d 1243, 1255-1256 (S.D. Fla. 2010) (vacating arbitration award and remanding for re-arbitration, relying on *Jones* and *Aloha*, where the award violated the CBA's majority vote requirements, noting that

"[c]ourts have consistently underscored the importance of majority voting when determining whether to enforce the award of a system board of adjustment").

The Court concludes that *Aloha* is equally applicable here and counsels strongly in favor of declining to enforce Brown's unilateral decision allowing Linn to continue her service on the Board following her retirement.  Like the CBA in *Aloha*, the CBA here provides that decisions of the Board must be by majority vote.  Brown's decision to allow Linn to continue her service on the Board was a "decision of the Board" that was made by Brown alone and not by a majority vote.  Thus, the decision violates the RLA and the parties' CBA and the Court cannot enforce the award because it fails to comply with the requirements of the RLA and the System Board, by violating the CBA's majority-vote provision, failed to conform, or confine, itself to matters within the scope of its jurisdiction.

AFA's attempt to distinguish *Aloha* is unavailing.  AFA points out the following differences between *Aloha* and the present case: (1) the underlying grievance in *Aloha* involved a disciplinary discharge while the present grievance does not; and (2) the replacement board member in *Aloha* did not attend the hearing while Linn was present at the hearing.  AFA does not explain the relevance of the first difference, and the second difference is beside the point.  As discussed, the *Aloha* court considered two separate questions in assessing compliance with the RLA: Did the neutral's arbitrator's unilateral decision violate the RLA and did the

20

post-hearing substitution of the departed airline representative cure the deficiency in the unilateral ruling?   The Court finds *Aloha*'s holding on the first issue instructive here.

Nor is the Court persuaded by AFA's argument that Brown had authority to unilaterally decide a procedural issue.   AFA argues that the Board composition issue is a procedural one and thus an issue properly decided by the arbitrator alone. However, assuming AFA is correct that the Board composition issue is a procedural one, AFA's conclusion that the issue was properly decided unilaterally by Brown does not follow.   The purpose of distinguishing between substantive and procedural arbitrability is to determine whether a particular issue must be decided by a court or through arbitration.   The conclusion that an issue is procedural means only that the matter must be decided – not by a court – but through the *agreed-upon* arbitration process.   The conclusion that an issue is procedural does not mean that the matter can be decided in arbitration in a manner that violates the RLA and the parties' CBA.   AFA points to no authority authorizing a unilateral decision by a lone System Board member under any circumstances and, as Spirit correctly points out, neither the RLA nor the CBA provide that procedural issues are excepted from the majority-vote requirement.

AFA's reliance on *John Wiley* and *Apperson* is misplaced.   In *John Wiley*, a union brought a lawsuit under the Labor Management Relations Act to enforce the

21

arbitration clause in a CBA against a corporate employer following a merger.  376 U.S. at 544, 84 S. Ct. at 911.  After determining that the arbitration agreement was binding on the corporation following the merger, the Court then considered whether the courts or the arbitrator is the appropriate body to decide whether procedural prerequisites to arbitration, as provided in the CBA, have been satisfied.  The CBA provided for arbitration as the third step in a three-step grievance process.  *Id.* at 555-556, 84 S. Ct. at 917.  The corporation argued that because steps one and two had not been followed, and because the duty to arbitrate did not arise until step three, it had no duty to arbitrate.  *Id.*  The Court held that this was an issue best left to the arbitration process – not the courts – because answering procedural questions (i.e., questions "grow[ing] out of the dispute and bear[ing] on its final disposition") is often intertwined with the merits of the underlying grievance.  *Id.* at 557, 84 S. Ct. at 918.

*Apperson* also involved a lawsuit under the Labor Management Relations Act.  One of the members of the multi-person arbitration panel in *Apperson*, Ian Hunter, was an attorney for one of the parties to the arbitration.  879 F.2d at 1350.  Pursuant to a rule providing that arbitrators must be unrelated to the parties to the arbitration, Hunter recused himself from the proceedings, but appointed his replacement pursuant to a rule allowing him to do so.  *Id.*  The party losing the arbitration argued that, once Hunter recused himself, he should have been disabled

22

from any further arbitral function, and that his ability to appoint his replacement amounted to a repudiation of the grievance mechanism, which would be a basis for vacating the award under the applicable legal framework. *Id.* at 1355. Citing *John Wiley*, the Sixth Circuit affirmed the district court's holding "that the method of choosing a replacement is a procedural matter best left for the arbitrators themselves to decide." *Id.*

Because neither *John Wiley* nor *Apperson* addresses the propriety of decisions made without a majority vote where a majority vote is required under the agreed-upon arbitration framework, they are not relevant here. In other words, the cases do not stand for the proposition that procedural issues may be decided by a single arbitrator; they stand only for the proposition that procedural issues must be decided through arbitration and not by the courts.

Finally, the Court addresses two new arguments made by AFA in a supplemental brief filed after oral argument.[5] First, AFA argues that the Board's decision did not violate the RLA because there is no majority-vote requirement under the RLA for board decisions, like the ones at issue here, that pertain to an existing CBA. However, the authority on which AFA relies, *Edwards v. United*

---

[5] The Court addresses these arguments even though they are untimely.

*Parcel Service, Inc.*, 16 F. App'x 333, 336-337 (6th Cir. 2001),[6] held only that 45 U.S.C. §§ 157 and 158 are inapplicable to board decisions that pertain to an existing CBA.[7]   The majority-vote requirement invoked by Spirit in this case is not, and never has been, codified at 45 U.S.C. §§ 157 or 158; rather, it is codified at 45 U.S.C. § 153 First (n), and has been codified in its current form at this location of the United States Code since 1970.   AFA cites no authority, and the Court is aware of none, holding that the applicability of § 153 First (n) is circumscribed in the same way as §§ 157 and 158.[8]

Second, AFA appears to argue that the Court should confirm the award because the unilateral nature of Brown's ruling on the Board composition issue

---

[6] *Edwards v. United Parcel Service* bounced back and forth between the district court and the Sixth Circuit several times, resulting in three Sixth Circuit opinions: *Edwards I*, 181 F.3d 100 (Table) (6th Cir. 1999); *Edwards II*, 16 F. App'x 333 (6th Cir. 2001); and *Edwards III*, 99 F. App'x 658 (6th Cir. 2004).

[7] Under § 158(g), "[an] agreement to arbitrate . . . [s]hall stipulate that the signatures of a majority of [the] board of arbitration affixed to their award shall be competent to constitute a valid and binding award."   Spirit does not rely on this statutory provision in attacking Brown's unilateral decision.   In fact, § 158(g) has not even been mentioned in these proceedings until AFA filed its post-hearing supplemental brief, and the cases on which the Court relies in this Opinion do not concern § 158(g).

[8] In reiterating the limited applicability of §§ 157 and 158, the *Edwards II* court felt "compelled to adhere" to an unexplained statement contained in a footnote of a published Sixth Circuit case decided about seventeen years earlier.   *Edwards II*, 16 F. App'x at 336-337 (relying on *Jones*, 728 F.2d at 260 n.2 ("The appellant also contends that the court erred in its determination that 45 U.S.C. §§ 157 and 158 are inapplicable to this case.   We affirm this portion of the judgment below.")).

24

was later corrected through Linn's subsequent concurrence with the decision on the grievance.  In support, AFA again relies on *Edwards v. United Parcel Service*.  In that case, the system board's award was signed only by the neutral arbitrator and not by any of the four partisan board members.  Relying on § 158(g) – not § 153 First (n) – the district court initially set aside the award as violative of the signature requirement of § 158(g).  However, the district court subsequently realized § 158's limited applicability, vacated its decision, and granted summary judgment in favor of the employer but without providing adequate reasoning for rejecting the employee's alternative arguments.  Thus, in *Edwards I*, the Sixth Circuit remanded for clarification of the reasoning behind the district court's ruling.

During the proceedings on remand, the district court addressed the employee's argument that the arbitration award in favor of the employer violated a provision in the parties' CBA mandating a board decision by majority vote.  The district court agreed with the employee that the award, which was signed only by the neutral arbitrator and not by the partisan board members, violated the majority-vote provision of the CBA, but, relying on affidavits submitted by the partisan board members, held that the flawed award was "corrected" by the partisan board members' subsequent votes to ratify the arbitrator's award.  In *Edwards III*, the Sixth Circuit affirmed this holding.  99 F. App'x at 660-661.

25

The Court does not believe that *Edwards III* is controlling here.  The board's decision in *Edwards III* resulted from a collaborative process in which the board members participated, and the only problem with the decision was a technical one with an easy fix, that being it lacked the signatures of a majority of the board members.  Conversely, Brown's unilateral ruling that Linn remained eligible to serve on the Board, which is itself a minor dispute, suffers from a far more serious flaw than a mere lack of signatures – the entire process governing minor disputes that is mandated by the RLA and CBA was disregarded.  For this reason, the failure of Brown's unilateral decision to comply with the majority-vote requirement of the CBA could not be cured later by Linn's ratification of the ultimate decision on the grievance.

For the reasons stated above, Brown's unilateral decision allowing Linn to continue her service on the System Board after her retirement violates the majority-vote provisions of the RLA and CBA.  Because the ultimate award would not have been possible absent Brown's unilateral ruling allowing Linn to continue her service on the Board, as Linn supplied the tiebreaking vote in favor of AFA, the System Board's ultimate award in favor of AFA is also invalid.   And because the ultimate award is invalid, AFA's motion for judgment on the pleadings, which seeks an order from the Court enforcing the award, must be denied.

26

## V.  CONCLUSION

For the reasons stated above, the Court concludes that the January 14, 2014 arbitration award cannot be confirmed.  *See* 45 U.S.C. § 153 First (q).  Therefore, AFA's motion for judgment on the pleadings seeking enforcement of the award is **DENIED**.  Although the Court believes that this Opinion resolves the case, the Court will issue a notice setting a status conference for the purpose of discussing how the parties wish to proceed.  The parties shall confer prior to the status conference and attempt to agree on a mutually agreeable course of action.

**SO ORDERED**.

Dated: September 18, 2014                    s/PATRICK J. DUGGAN
                                             UNITED STATES DISTRICT JUDGE

Copies to:

Peter J. Petesch, Esq.
William B. Balke, Esq.
John R. Runyan , Jr., Esq.
Marshall J. Widick, Esq.
Peter C. Swanson, Esq.