UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPIRIT AIRLINES, INC.,

       Plaintiff,                           Case No. 14-CV-10715

v.                                          Honorable Patrick J. Duggan

ASSOCIATION OF FLIGHT
ATTENDANTS – CWA, AFL-CIO,

       Defendant.
_____/

**<u>OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, and ENFORCING THE JANUARY 10, 2014 ARBITRATION AWARD</u>**

**I.  INTRODUCTION**

This case is brought under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*.  Plaintiff Spirit Airlines, Inc. ("Spirit") asks the Court to vacate an arbitration award issued pursuant to the mandatory arbitration provisions of the RLA and the collective bargaining agreement ("CBA") between Spirit and Defendant Association of Flight Attendants – CWA, AFL-CIO ("AFA").  AFA filed a counterclaim, urging the Court to enforce the award.

On September 18, 2014, the Court issued an Opinion denying AFA's motion for judgment on the pleadings, which sought enforcement of the arbitration award

at issue in this litigation. *See Spirit Airlines, Inc. v. Ass'n of Flight Attendants-CWA, AFL-CIO*, No. 14-CV-10715, 2014 WL 4678235 (E.D. Mich. Sept. 18, 2014). The award, which resolved in favor of AFA a grievance concerning domestic partner health care benefits available to Spirit flight attendants, was issued by a three-member System Board of Adjustment consisting of two partisan members – Carmen Linn, AFA's designated representative and a Spirit flight attendant at the time of her appointment, and Costin Corneanu, Spirit's designated representative and a member of its management team – and Susan Brown, a neutral arbitrator chosen in accordance with the procedures set forth in the parties' CBA. The Court held that the award, which was issued on January 10, 2014, could not be enforced because it resulted from a violation of the majority-vote provisions of the RLA and CBA.[1]

Specifically, an issue arose during the arbitration proceedings whether Linn could continue her service on the Board in light of her retirement as a Spirit flight attendant, which occurred during the arbitration proceedings, before the Board issued its final award in favor of AFA. Interpreting a provision of the parties'

---

[1] Under the RLA, "[a] majority vote of all members of . . . the Adjustment Board eligible to vote shall be competent to make an award with respect to any dispute submitted to it." 45 U.S.C. § 153 First (n). The parties' CBA contains a similar provision: "Decisions of the Board shall be rendered within thirty (30) days after the close of the hearing and/or submission of briefs and shall be by a majority vote." CBA at 111 (Am. Compl. Ex. 1, ECF No. 2-1).

CBA requiring that the two partisan Board members "be full time Company employees," CBA at 110 (Am. Compl. Ex. 1, ECF No. 2-1), Brown unilaterally determined that Linn's continued service on the Board after her retirement was appropriate because "the composition of the Board was proper when initially constituted" and "[a] Board member's status does not change during the life of a case even though that member may become ineligible to serve on *future* Boards." 11/18/13 Brown Letter (Am. Compl. Ex. 11, ECF No. 2-11) (emphasis in original). As a result of Brown's ruling on this issue concerning the composition of the Board, Linn remained on the Board and supplied the tiebreaking vote on the grievance in favor of AFA.

Because Brown's ruling on the board composition issue was unilateral and not by majority vote, the Court concluded in its September 18 Opinion that the Board's award resolving the grievance in favor of AFA, which was made possible only because Brown ruled that Linn could continue her service on the Board following her retirement, resulted from a violation of the majority-vote provisions of the RLA and CBA. As a result, the Court held that the award could not be enforced. However, the Court did not vacate the award, particularly because there was no motion then pending by Spirit asking the Court to do so.

After the Court denied AFA's motion for judgment on the pleadings, counsel for both parties appeared at a status conference in chambers on October 7,

3

2014. At the conference, the Court proposed what it thought was a reasonable and fair resolution to the protracted proceedings on the grievance at issue in this case. However, the parties rejected the Court's proposal, instead opting to continue down the path of litigation.

Now before the Court are the parties' cross-motions for summary judgment. AFA again asks the Court to enforce the award, and Spirit for the first time asks the Court to vacate the award. The motions are fully briefed. For the reasons that follow, the Court now concludes that its previous determination that the award resulted from a violation of the RLA and CBA is erroneous and that the award should be enforced. Accordingly, the Court will grant AFA's summary judgment motion, deny Spirit's summary judgment motion, and enforce the arbitration award.

## II. BACKGROUND

A detailed recitation of the pertinent background can be found in the Court's September 18 decision resolving AFA's motion for judgment on the pleadings. *See* 2014 WL 4678235, at *1-5.

## III. ANALYSIS

AFA previously argued in its motion for judgment on the pleadings that the board composition issue – that is, whether Linn's continued service on the board following her retirement was proper under the CBA – is a procedural issue that

Brown had authority to decide alone. As it turns out, AFA was right – but not for the reason it asserted.

In support of the argument that Brown's unilateral decision on the board composition issue was proper under the RLA and CBA, AFA relied mainly on *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S. Ct. 909 (1964) and *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344 (6th Cir. 1989). The Court rejected this argument in its September 18 decision, noting that *John Wiley* and *Apperson* stand only for the proposition that procedural issues must be decided through the arbitration process and not by the courts, and not for the proposition that procedural issues may be decided by a single member of a multi-member arbitration board. *See* 2014 WL 4678235, at *10-11. The Court believes that this conclusion was, and is, correct; *John Wiley* and *Apperson* do not support the argument that Brown could decide the board composition issue on her own.

In addition, AFA briefly argued in the prior round of motion practice (in a footnote to its reply brief), and again argues in the present round of motion practice, that procedural rulings need not be made by majority vote under the RLA. However, the authority on which AFA relies both then and now, *United Transportation Union v. Gateway Western Railway Co.*, 284 F.3d 710 (7th Cir. 2002), does not support AFA's argument.

5

Nevertheless, Brown's unilateral decision on the board composition issue did not violate the majority-vote provision of the RLA because the RLA's majority-vote provision applies only to *final* system board awards, not to decisions on issues that arise during the course of the grievance proceedings and precede the final award. Moreover, Brown's unilateral decision arguably did not violate the majority-vote provision of the CBA, contrary to the Court's previous conclusion, because the CBA's majority-vote provision arguably only applies to final awards, and thus Brown's decision to rule on the matter draws its essence from the CBA inasmuch as it does not clearly violate the CBA.

Under the RLA's majority-vote provision, "[a] majority vote of all members of . . . the Adjustment Board eligible to vote" is required "to make an award with respect to any dispute submitted to it." 45 U.S.C. § 153 First (n). As "award" is undefined in the RLA, the Court "give[s] it its ordinary meaning," *United States v. Santos*, 553 U.S. 507, 511 128 S. Ct. 2020, 2024 (2008), which is "[a] *final* judgment or decision, esp. one by an arbitrator." Black's Law Dictionary 164 (10th ed. 2014) (emphasis added). *See also* Webster's Third New Int'l Dictionary 152 (1986) (defining "award" as "a judgment, sentence, or final decision; esp: the decision of arbitrators in a case submitted to them"). "Final," in turn, means "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated; concluded." Black's Law Dictionary at 747; *see*

6

*also* Webster's Third New Int'l Dictionary at 851 (defining "final" as "ending a court action or proceeding leaving nothing further to be determined by the court or to be done except the administrative execution of the court's finding but not precluding the right to appeal to or continue the case in any other court upon the merits"). Therefore, the RLA mandates only that final system board decisions – that is, decisions that conclude the grievance proceedings – be by majority vote, and does not require a majority vote for preliminary decisions leading to a final decision, such as Brown's decision on the board composition issue. Because Brown's decision resolving the board composition issue was not "[a] final judgment or decision," Black's Law Dictionary at 164, or one that "end[ed] . . . [the] proceeding leaving nothing further . . . to be done," Webster's Third New Int'l Dictionary at 851, it did not require a majority vote. Therefore, Brown's failure to decide the issue by majority vote did not constitute a violation of the RLA's majority-vote provision.

The conclusion that the RLA's majority-vote requirement does not apply to rulings short of a final decision on the grievance is supported by the Ninth Circuit's decision in *United Transportation Union v. BNSF Railway Co.*, 710 F.3d 915, 929 (9th Cir. 2013). There, the court acknowledged that the RLA's majority-vote provision, 45 U.S.C. § 153 First (n), applies only to an "award," which the court noted is a decision "that resolves any matters finally," not to an "order,"

7

another undefined word used in the RLA, such as a recusal order issued by one member of a multi-member system board. In addition, the RLA itself refers to "awards" as "final," 45 U.S.C. § 153 First (m), another indication that the only type of system board decision that is subject to the majority-vote requirement is a final one that determines the merits of the grievance.

Brown's decision on the board composition issue also did not clearly violate any provision of the parties' CBA. Notably, the CBA does not contain any explicit guidance on how disputes arising during the course of the grievance proceedings should be decided, and it is not clear whether all system board decisions, as opposed to only final decisions resolving the grievance, are subject to the CBA's majority-vote requirement. The CBA's majority-vote provision provides: "Decisions of the Board shall be rendered within thirty (30) days after the close of the hearing and/or submission of briefs and shall be by a majority vote and shall be final and binding on all parties." CBA at 111 (Am. Compl. Ex. 1, ECF No. 2-1). Because the CBA arguably did not prohibit Brown from issuing a unilateral decision resolving a procedural issue growing out of the grievance proceedings, the Court cannot conclude that she "ignore[d]" or "misread" the plain language of the CBA by issuing a unilateral ruling on the board composition issue. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct.

364, 371 (1987). Her decision to do so therefore "draw[s] its essence" from the CBA. *Id.*

The parties disagree on exactly how the board composition issue should have been resolved. Spirit claims that AFA was required to file a separate grievance concerning the issue and that it should have been assigned to a different system board, while AFA claims that the issue was properly resolved by the Board having jurisdiction over the underlying proceedings on the health care grievance. There is no clear answer to this dispute because, again, nothing in the CBA sheds light on how procedural disputes arising during the course of the grievance proceedings should be resolved. In other words, nothing in the CBA suggests that the System Board consisting of Brown, Linn, and Corneanu had jurisdiction over the board composition issue, and nothing in the CBA suggests that the same System Board lacked jurisdiction over the issue. The case law to which the parties refer, *John Wiley* and *Apperson*, also does not resolve the issue. As explained, that authority provides only that procedural issues should be decided in arbitration and not by a court.

For the reasons explained above, the Court does not believe that the RLA or CBA *required* that the board composition issue be decided by majority vote. Under the RLA, only final awards that end the grievance proceedings are subject to the majority-vote requirement of 45 U.S.C. § 153 First (n). The same is arguably

9

true under the CBA; thus, the Court cannot conclude that Brown "ignore[d]" or "misread" the plain language of the CBA by issuing a unilateral ruling on the board composition issue, and her decision to do so "draw[s] its essence" from the CBA. *See Misco*, 484 U.S. at 38, 108 S. Ct. at 371. Because the Court's previous decision declining to enforce the Board's award was based entirely on the finding that Brown's unilateral decision on the board composition issue violated the RLA and CBA, and because the decision did not, in fact, violate the RLA and draws its essence from the CBA, the unilateral nature of the ruling is not an appropriate basis on which to decline to enforce the Board's ultimate award in favor of AFA.[2]

Spirit advances three additional arguments against the enforcement of the arbitration award. First, Spirit argues that preclusion principles prevented Brown from concluding that Linn could continue her service on the Board following her retirement, in light of this Court's earlier holding to the contrary in prior litigation between AFA and Spirit concerning the present grievance proceedings. *See Association of Flight Attendants – CWA, AFL-CIO v. Spirit Airlines, Inc.*, No. 12-CV-15641, 2013 WL 1858754 (E.D. Mich. May 2, 2013). There, AFA sought an

---

[2] Alternatively, even if the RLA and/or CBA required that the board composition issue be decided by majority vote, the lack thereof is harmless in light of Linn's signature on the final award. Had Linn believed that her retirement rendered her ineligible to continue her service on the Board, she could have expressed her view in her own separate final decision on the grievance. Instead, Linn joined Brown's opinion, an implicit acknowledgement that she deemed herself eligible to serve as a Board member.

order recognizing either Linn or Rios as the AFA System Board representative for the purposes of completing the arbitration of the grievance. On May 2, 2013, the Court granted Spirit's motion to dismiss, holding that only final arbitral awards are subject to judicial review and that Brown's decision was not yet final because "a majority vote is required to render a final decision" and, "[a]ccording to the CBA, Linn became ineligible to serve as a System Board member once she ceased being a full-time Spirit employee." 2013 WL 1858754, at *5.

In holding that Linn became ineligible to serve on the Board once she ceased being a full-time Spirit employee, the Court did not intend to conclusively resolve a minor dispute, nor did it have authority to conclusively resolve a minor dispute. *See Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 304 109 S. Ct. 2477, 2481 (1989) ("The [Adjustment] Board . . . has exclusive jurisdiction over minor disputes."). Rather, the issue before the Court was whether there existed, at that time, a final and binding arbitration award that was subject to judicial review and capable of judicial enforcement. To answer that question, the Court considered whether Brown's draft award enjoyed the backing of a majority of the System Board – an inquiry that involved the consideration of a minor dispute, that being whether Linn was eligible to continue her service on the Board following her retirement. In other words, the Court was faced with a minor dispute as part of its analysis of another issue that it was tasked with deciding. The Court's conclusion

11

about Linn's post-retirement eligibility to serve on the Board was in no way meant to preclude an arbitral finding that Linn remained eligible despite her retirement or otherwise limit the options available to the parties going forward with regard to any avenues available under the CBA for completing the arbitration. *See* 2013 WL 1858754, at *6 ("The fact that Arbitrator Brown's decision is not now final and binding does not mean that it may not become so.").[3]

Spirit also argues that the law-of-the-case doctrine prevents the Court from enforcing the award in light of the Court's September 18 Opinion declining to do so. However, the rationale supporting the Court's decision to enforce the award was not discussed in the prior round of motion practice and, in any event, the Court has authority to reconsider and correct an error in a previous ruling. *See Pac. Emp'rs Ins. Co. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 398 (6th Cir. 2002) ("Where the ruling in question was not made by a higher court, the decision to reconsider the prior determination is subject to review under an 'abuse of discretion' standard. . . . [a]nd it is not an abuse of discretion to revisit a prior ruling that is found to be erroneous.").

---

[3] The case on which Spirit relies in support of its argument that preclusion principles barred Brown from deciding the board composition issue is not relevant here. *See Beden v. United Auto Workers Local 9699*, No. 10-CV-14851, 2011 WL 3810099 (E.D. Mich. Aug. 29, 2011). This is because *Beden* was not an RLA case holding that a federal court's incidental ruling on a minor dispute could bind the exclusive tribunal charged with conclusively deciding such issues.

Finally, Spirit argues that the Board's final award in favor of AFA should be vacated because it is wholly baseless and reflects the arbitrator's own notions of industrial justice. Spirit Br. at 23 (ECF No. 47). The Supreme Court has articulated the standard of review applicable to system board decisions:

> Judicial review of a labor-arbitration decision . . . is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. We recently reiterated that if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable. When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrators improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award.

*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728 (2001) (citations, quotation marks, and brackets omitted). Interpreting *Garvey*, the Sixth Circuit listed three questions – and only three questions – that courts should consider in determining whether to enforce an award:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

*Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007). "So long as the arbitrator does not offend any of these

13

requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." *Id.*

The nature of the healthcare grievance can be summarized as follows. Spirit offers its flight attendants a choice of four healthcare plans. Although Spirit is not contractually obligated to offer healthcare benefits to the domestic partners of its flight attendants, it voluntarily decided to do so. However, flight attendants opting to obtain coverage for their domestic partners are limited to just one out of the four healthcare plans and excluded from the other three, as are their domestic partners. In contrast, married flight attendants and their spouses may select from all four plans. AFA brought a grievance on behalf of a Spirit flight attendant adversely affected by this policy, arguing that the policy of treating domestic partners different from married spouses violates a provision of the CBA prohibiting discrimination based on marital status.

The Board held, over Corneanu's dissent, that Spirit's policy of treating married flight attendants and their spouses more favorably than partnered flight attendants and their partners by affording the former group more healthcare options than the latter violated the CBA's prohibition on marital status discrimination, which requires Spirit to "give equal opportunity to all qualified persons without regard to . . . marital status":

14

> The Company will provide insurance to all [flight attendants]; however, Flight Attendants whose relationships are by marriage have access to the choice of four different plans for him or herself, the other adult and any children; Flight Attendants whose relationships are by partnership, however, are restricted to using only one of those plans for him or herself, the other adult and any children. The only difference between these Flight Attendants is their marital status, a situation that violates both the Company's own policy of non-discrimination in the provision of benefits on the basis of marital status and, pertinent to this Board, the same contractual ban found in Section 23 B [of the CBA].

Arbitration Opinion & Award at 14-15 (Am. Compl. Ex. 12, ECF No. 2-12).

Spirit does not argue that the Board acted outside its authority in resolving this dispute, nor does Spirit allege fraud, dishonesty, or a conflict of interest. Therefore, if the award is to be vacated, Spirit must show that the majority was not arguably construing or applying the contract in resolving legal or factual disputes in the case. Spirit has not satisfied its burden. While Spirit states that the award reflects an "abandonment of contract language, legal precedent, past practice between the parties, and bargaining history," Spirit Br. at 23-24 (footnote omitted), it does not explain the precise basis for its belief. Having thoroughly reviewed the Board's decision, the Court concludes that it was arguably construing and applying the CBA. In its decision, the Board noted the pertinent CBA provisions, Arbitration Opinion & Award at 2-4, outlined the parties' arguments, *id.* at 7-9, discussed the bargaining history of the parties, *id.* at 13-14, addressed and rejected Spirit's various arguments, *id.* at 13-15, 17-18, and distinguished the case law on

which Spirit relied. *Id.* at 15-18. Spirit's conclusory argument that the award does not draw its essence from the CBA is unpersuasive.

## IV. CONCLUSION

For the reasons stated, AFA's motion for summary judgment is **GRANTED**, Spirit's motion for summary judgment is **DENIED**, and the January 10, 2014 award in favor of AFA is **ENFORCED**.

**SO ORDERED**.

Dated: June 17, 2015                     s/PATRICK J. DUGGAN
                                         UNITED STATES DISTRICT JUDGE

Copies to:

Peter J. Petesch, Esq.
William B. Balke, Esq.
John R. Runyan , Jr., Esq.
Marshall J. Widick, Esq.
Peter C. Swanson, Esq.